RANDAL NICHOLSON *vs.* THE WILLIAMSTOWN AND GOOD IN-
TENT TURNPIKE COMPANY.

1. To enable a turnpike company to maintain an action for tolls due them for travelling their road, it is not necessary that they should erect gates across their road, nor that they should demand the toll of the traveller at the time that he passes.

2. Every person passing over a turnpike road is bound to pay the toll prescribed by the charter of the company, whether it is demanded or not.

3. The charter of a turnpike company provided that nothing in the act should be so construed as to entitle the company to demand or receive toll of or from any person "passing to or from his common business on his farm" —*held*, that the exemption from tolls applied to those who were compelled to pass upon the road in going from one part of their farms to another, or in going from their dwellings to any farm which they may cultivate, but did not extend so far as to allow a farmer, who owned a marl pit from five to seven miles from his farm, to haul marl from the pit to his farm without the payment of toll.

*Certiorari* to Camden Common Pleas.

Argued before Justices OGDEN and HAINES.

The opinion of the court was delivered by

OGDEN, J. The turnpike company recovered a judgment against Randal Nicholson, in the Common Pleas of Camden, on an appeal taken from the judgment of Justice Garwood, for sundry tolls claimed of him for passing with his teams over a portion of their turnpike road. The validity of the recovery is questioned upon three distinct grounds—*first*, that the plaintiffs made no proof of the toll being demanded before the suit was commenced; *second*, that the defendant below did not pass through any toll gate erected on the road of the plaintiffs; and *third* (which was the main ground relied on), that the defendant was exempt from toll, because "he was passing to and from his common business on his farm." The first and second reasons for reversal may be disposed of together,

because they involve the same question of law. Does the right to recover tolls for travelling upon the road of the plaintiffs depend upon a demand being made for it at a barrier erected by them for the purpose of stopping the traveller. Is the erection of gates a condition precedent to the exercise of the franchise of receiving toll, or are such erections authorized as cumulative remedies for the company to enforce the payment of their lawful dues?

I find nothing in the charter which requires the company to erect gates. For aught that therein appears, they may dispense with gates altogether, and may have toll gatherers stationed at different points along the line in the open air authorized to demand and receive the tolls. It is more convenient and comfortable for them to have houses, and to throw gates across the road-bed, but no such obligation is imposed by their charter.

The law creates the duty for the traveller to pay the legal toll, irrespective of the aids which it gives to the company for enforcing the performance of the duty. There is an implied promise upon the part of those who are subject to the exaction, when they enter upon and travel a turnpike road, that they will pay the toll which the charter of the company authorizes may be exacted. In the case before us the company were allowed to demand and receive toll for travelling each mile of their road not exceeding given rates. The charter prescribes no mode in which the demand shall be enforced; and the principles of the common law will give them a remedy to recover the compensation fixed by the statute for the use of their property. 4 *Halst.* 37.

*Indebitatus assumpsit* will be for tolls; and Justice Buller says, " an implied promise will maintain the action." 1 *D. & E.* 616.

The Supreme Court of New Hampshire, in *Chorley* v. *Smith, Adams' Reports, p.* 20, held that the power given to detain travellers at the gates was only a cumulative remedy; and they sustained an action of *assumpsit* against a

person who had been allowed by mistake to pass as one exempted from the payment of tolls. The authorities on this subject are so numerous and uniform that there can be no serious doubt of the right of the company to maintain an action for the recovery of tolls due to them without the use of a gate, and without making a demand of it, every time the traveller passes along portions of their road omitting to pay the specified rates.

*Thirdly.* Was the defendant below within the exemption of the charter?

In the eighth section, which establishes the rate of toll per mile to be exacted for travelling with vehicles, and passing with horses, cattle, and other live stock on the said turnpike road, it is provided that nothing in the act shall be construed so as to entitle the company to demand or receive toll of or from any person "*passing to or from his common business on his farm.*" There are other exemptions in the provision which it is not material should be noticed for the purposes of this case.

Has the defendant shown himself to be within the letter and spirit of the exemption? By reference to the state of the case agreed upon by counsel, it appears that the turnpike road, in its course towards Camden, passes along the mouth of *the Fries mill road*, and also that of another common road, and that it intersects and crosses, at a point about a mile and a half from the Fries mill road, the *county-house road*. On the northeast, or upper side of this intersection, the company have placed a gate. From a point still more to the northeast, on the county-house road, a road is laid from it, which also crosses the turnpike. On this road, and about half way between the county-house road and the turnpike, is a marl pit, belonging to the defendant, which is nearer to his farm, by the way of that cross-road and the turnpike above the gate, than by the way of that cross-road and of the county-house road down to the gate.

The distance which the defendant habitually travelled

upon the turnpike, was between the Fries mill road and the county house road, and is said to be about one and a half miles.

It is not proved that the marl pit is in anywise connected with defendant's farm, or that he owns any tillable land about the pit. It also appears, from the statement of the case, that the defendant lives upon his farm, which is situated on the Fries mill road, from five to seven miles distant from the marl pit. The use which he made of the turnpike was in carting marl from the pit, to be used in fertilizing his farm.

The law of the case must be deduced from these prominent facts. Do they show that, on the occasions referred to in the state of demand, and for which a recovery was had, the defendant was passing to and from his common business on his farm? Will a reasonable interpretation of the charter exempt him from the payment of the tolls which have been charged to him? The design of the legislature manifestly was to relieve from tolls those who were compelled to pass to and fro upon the road in going from one part of their farm to another, or in going from their dwellings to any farm which they may cultivate.

The act should be so construed as, on the one hand, to secure to the corporation the toll to which they are legally entitled, and on the other, to protect from imposition those whom the legislature intended should use the road free of charge.

Neither the farm of the defendant nor his marl pit are upon the turnpike, the former being some two or three miles, and the latter, perhaps, a mile from the portion of the road which he claims the right to travel upon exempted from tolls. That every farmer, who chooses to purchase marl or other manures miles from his residence and farm, may carry the same over all intervening turnpike roads without paying toll, would be giving to such charters a most unreasonable construction.

The intention of the legislature, in introducing such

provisions into acts of incorporation of turnpike companies, must have been to secure the exemption to farmers being fairly within the purview of their enactments, so that the cultivation of their lands might not be unreasonably retarded by oppressive exactions.

If the construction contended for by the counsel for the defendant be the true one, then all the turnpikes in Monmouth and other counties, where deposits of marl are found, would be free for the passage to and fro of all farmers in the county, or elsewhere, who might choose to purchase the manure in a pit or by the load, and to haul it any number of miles to their farms. The carting which does the greatest injury to highways would thus be done without furnishing to the companies funds wherewith to amend and maintain their roads.

I am of opinion that the plaintiffs were entitled to re cover upon the evidence, and that the judgment of the court below should be affirmed.

Let a rule to that effect be entered.